**E-FILED**
Thursday, 05 November, 2015  01:14:33 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | |
|---|---|
| MAHER ABDELJAWAD, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>GALARDI GROUP, INC., a California corporation,<br><br>*Defendant.* | Case No.: 2:15-cv-02265 |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Maher Abdeljawad brings this Class Action Complaint and Demand for Jury Trial against Defendant Galardi Group, Inc., and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Defendant Galardi is a self-proclaimed pioneer of the "limited-service" food industry, bringing to market some of "the world's most wanted restaurant brands,"[1] including "the world's largest hot dog chain," Wienerschnitzel.[2]

2.      Galardi credits its success, in part, to its best-selling "100% all-beef" chili hot dogs, which it heavily advertises in its marketing materials and at its brick-and-mortar retail locations.

---

[1]      *About Galardi Group, Inc.*, LinkedIn Corporation, https://www.linkedin.com/company/galardi-group (last visited Oct. 27, 2015).

[2]      *About Wienerschnitzel*, The Galardi Group, Inc., http://www.wienerschnitzel.com/about/ (last visited Oct. 27, 2015).

3.      Unfortunately, Galardi's "delicious secret-recipe chili" actually contains no beef at all and, instead, is comprised primarily of pork.

4.      Had Galardi informed its customers that its all-beef chili dogs were not actually all beef, customers like Plaintiff would not have been willing to purchase them.

5.      Accordingly, Plaintiff brings suit on behalf of himself and all others similarly situated, to seek redress for Galardi's unlawful conduct.

**PARTIES**

6.      Plaintiff Maher Abdeljawad is a natural person and citizen of the State of Illinois.

7.      Defendant Galardi Group, Inc. is a California corporation with its headquarters located at 7700 Irvine Center Drive, Suite 550, Irvine, California 92618. Galardi conducts business throughout this District, the State of Illinois, and the United States.

**JURISDICTION AND VENUE**

8.      This Court has personal jurisdiction over Galardi because it regularly conducts business in this District, including by soliciting business from, and entering into transactions with, consumers located in this District. Further, the unlawful conduct alleged in the Complaint occurred in, was directed at, and/or emanated from this District. Specifically, Plaintiff made the purchases at issue in this District.

9.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because at least one Class member is a citizen of a State different than Galardi, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and none of the exceptions under that subsection apply to this action.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred in this District. Venue is

additionally proper because Plaintiff resides within this District and Galardi conducts significant business in this District, including soliciting consumer business and entering into consumer transactions here.

## INTRADISTRICT ASSIGNMENT

11.     Pursuant to Local Rule 40.1(D), this case should be assigned to the Urbana Division.

## COMMON FACTUAL ALLEGATIONS

12.     Since its inception in 1961, Defendant Galardi has grown to become—what it claims to be—"the world's largest hot dog chain."[3] Serving more than 120 million hot dogs per year, Galardi boasts that it became famous because of its "secret-recipe chili that [it likes] to smother on" its hot dogs.[4]

13.     As shown in Figures 1–3 below, Galardi capitalizes on this success by heavily promoting its 100% all-beef chili dogs on its website and at its brick-and-mortar retail locations (on their menus).



**(Fig. 1)**



**(Fig. 2)**

---

[3]     *See* note 2, *supra.*

[4]     *See id.*



**(Fig. 3)**

14.     Galardi markets its chili hot dogs as being all beef because consumers place a premium on all-beef hot dogs compared to those containing pork. Galardi's decision to prominently display its all-beef products on its menus and websites and charge more for its all-beef chili cheese dogs (typically $1.00 more for the all-beef versions) is instructive of Galardi's recognition of this premium.

15.     Unfortunately, despite its representations to the contrary, Galardi's all-beef chili hot dogs actually contain pork. In fact, absent from Galardi's advertising materials is any mention that the chili used for its all-beef chili hot dogs is made primarily with pork.

16.     Ultimately, customers purchase Galardi's all-beef chili hot dogs because they are purportedly all beef. Customers—including Plaintiff and the proposed Class of consumers defined below—would not have purchased Galardi's all-beef chili hot dogs had they known that they contained pork.

**FACTS SPECIFIC TO PLAINTIFF ABDELJAWAD**

17.     Starting in or around March 2015, Plaintiff starting visiting his local Wienerschnitzel restaurant.

18.     In light of certain dietary and religious restrictions, Plaintiff would always search Wienerschnitzel's menu for items that did not contain pork. Plaintiff would then view Galardi's advertisements and read its express warranties about its all-beef chili hot dogs—which were the same as (or substantially similar to) the representations depicted in Figures 1–3 above.

4

19.     Relying upon these representations—namely that the "all-beef" chili (and chili cheese) hot dogs were made entirely of beef—Plaintiff purchased Galardi's all-beef chili hot dogs (on several different occasions).

20.     Because he was purchasing hot dogs that were advertised as being all-beef, Plaintiff reasonably believed that they were, in fact, made entirely of beef. Plaintiff relied on these advertisements when forming his purchasing decision.

21.     In or around May 2015, Plaintiff became concerned that the chili used in the all-beef chili hot dogs he purchased contained pork. As such, Plaintiff repeatedly attempted to contact Galardi to inquire about its ingredients and eventually spoke with an individual at his local Wienerschnitzel restaurant to confirm whether the all-beef chili hot dogs were actually all beef. Unfortunately, the Wienerschnitzel representative informed him that the chili was actually made from pork.

22.     Had Galardi disclosed that its "all-beef" chili hot dogs contained pork, Plaintiff would not have purchased the hot dogs at all.

23.     As a result, Plaintiff has suffered damages in an amount equal to the value of the "all-beef" chili hot dogs he purchased.

## CLASS ALLEGATIONS

24.     **Class Definitions**: Plaintiff brings this action on behalf of himself and a proposed class and subclass, defined as follows:

> **Class**: All persons in the United States who have purchased "all-beef" chili hot dogs or "all-beef" chili cheese hot dogs from Wienerschnitzel.

> **Illinois Subclass**: All members of the Class who reside in the State of Illinois.

The following people are excluded from the Class and Illinois Subclass (collectively referred to as the "Class," unless otherwise indicated): (1) any Judge or Magistrate presiding over this action

and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

25.    **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, there are thousands of people in the Class. Ultimately, members of the Class will be easily identified through Defendant's records.

26.    **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class, and predominate over any questions affecting only individual members. Those questions with respect to the Class include, but are not limited to:

(a)    Whether Galardi intentionally misrepresented and marketed its all-beef chili hot dogs as being "all beef";

(b)    Whether Galardi's conduct described herein constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*;

(c)    Whether Galardi's conduct described herein constitutes a breach of express warranty; and

(d)    Whether Galardi's conduct described herein constitutes fraudulent inducement.

27.    **Typicality**: Plaintiff's claims are typical of the claims of the other Class

members. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful

conduct.

28.    **Adequate Representation**: Plaintiff will fairly and adequately represent and

protect the interests of the Class, and has retained counsel competent and experienced in

complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant

has no defenses unique to Plaintiff.

29.    **Policies Generally Applicable to the Class**: This class action is appropriate for

certification because Defendant has acted or refused to act on grounds generally applicable to the

Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible

standards of conduct toward the Class members, and making final injunctive relief appropriate

with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect

the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's

conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

30.    **Superiority**: Class proceedings are superior to all other available methods for the

fair and efficient adjudication of this controversy, as joinder of all Class members is

impracticable. The damages suffered by the individual Class members will likely be small

relative to the burden and expense of individual prosecution of the complex litigation

necessitated by Defendant's actions. Thus, it would be virtually impossible for the Class

members to obtain effective relief from Defendant's misconduct on an individual basis. Even if

Class members could sustain individual litigation, it would not be preferable to a class action,

because individual litigation would increase the delay and expense to all parties due to the

complex legal and factual controversies presented in this Complaint. By contrast, a class action

presents far fewer management difficulties and provides the benefits of single adjudication,

economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq.***
**(On Behalf of Plaintiff and the Illinois Subclass)**

31.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

32.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. (the "ICFA"), protects both consumers and companies by promoting fair competition in commercial markets for goods and services.

33.     The ICFA prohibits any unlawful, unfair or fraudulent business acts or practices, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact.

34.     As described herein, Galardi has engaged in deceptive and fraudulent business practices, as defined by the ICFA, by (i) misrepresenting that its all-beef chili hot dogs were all beef when, in fact, they were not, and (ii) selling all-beef chili hot dogs that weren't all beef to consumers.

35.     Specifically, Galardi affirmatively represented to Plaintiff and the Illinois Subclass that its all-beef chili hot dogs were made entirely of beef.

36.     Unfortunately, these representations were false. Galardi's all-beef chili hot dogs contained pork.

37.     Galardi has violated the "unfair" prong of the ICFA in that it caused substantial injury to consumers through its actions identified above. The injury caused by Galardi's conduct is not outweighed by any countervailing benefits to consumers, and the injury is one that consumers themselves could not have reasonably avoided. Given the information asymmetry

between Galardi and consumers regarding the contents of its all-beef chili hot dogs, Galardi knew or had reason to know that Plaintiff and the Illinois Subclass could not reasonably have known of or discovered the falsity of its representations or avoided the harm those misrepresentations caused.

38.     Galardi has also violated the "fraudulent" prong of the ICFA in that its statements, advertisements, and representations regarding the contents of its all-beef chili hot dogs— substantially similar to those depicted in Figures 1–3—are false and likely to deceive a reasonable consumer.

39.     Indeed, if its representations that its chili hot dogs were made of "all-beef" were not materially likely to influence reasonable consumers' purchasing decisions, Galardi would not have had any reason to make such representations, nor would it have charged a premium for its "all-beef" products.

40.     Galardi's unfair and fraudulent conduct directly and proximately caused Plaintiff and the Illinois Subclass actual monetary damages in the form of the price paid for Galardi's all-beef chili hot dogs.

41.     Accordingly, Plaintiff seeks an Order: (i) permanently enjoining Galardi from engaging in the unfair and fraudulent conduct described above; (ii) requiring Galardi to pay actual and compensatory damages; and (iii) requiring Galardi to pay interest, attorneys' fees, and costs.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty**
**(On behalf of Plaintiff and the Class)**

42.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

43.     Galardi advertised and otherwise represented to Plaintiff and the Class that its all-beef chili hot dogs were made entirely of beef.

44.     The above statements were representations of fact made by Galardi. That is, Galardi expressly warranted to Plaintiff and the Class that the all-beef chili hot dogs, sold by or on behalf of Galardi, were actually all beef.

45.     Plaintiff and the Class relied upon those affirmations, promises, and descriptions when purchasing Galardi's all-beef chili hot dogs as advertised, promised, and described.

46.     Galardi, under the Uniform Commercial Code, was obligated to deliver its all-beef chili hot dogs as advertised, promised, and described.

47.     Galardi breached its express warranties to Plaintiff and the Class by selling "all-beef" chili hot dogs that actually contained pork meat.

48.     Given the information asymmetry between Galardi and Plaintiff and the Class regarding the contents of its "all-beef" chili hot dogs, Plaintiff and the Class did not and could not reasonably have known of or discovered the falsity of its representations or avoided the harm those misrepresentations caused.

49.     Because they did not receive the all-beef chili hot dogs as advertised, Plaintiff and the Class have been damaged inasmuch as they did not receive the products they paid for.

50.     While Plaintiff was not required to give notice to Galardi regarding its breach of express warranties—because it already had actual knowledge of its misrepresentations and it also expressly warranted to consumers (including Plaintiff and the Class) that its all-beef chili hot dogs were, in fact, all beef—he provided notice to Galardi (or its agents) that it breached the express warranties described above in or around May 2015.

51.     As a direct and proximate cause of Galardi's breach, Plaintiff and the other members of the Class have suffered actual monetary damages in the form of the price paid for Galardi's all-beef chili hot dogs.

### THIRD CAUSE OF ACTION
### Fraudulent Inducement
### (On Behalf of Plaintiff and the Class)

52.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.     As described with particularity above, Galardi has used, and continues to use, marketing tactics it knows or reasonably should know are false and misleading.

54.     To induce Plaintiff and the Class into purchasing its all-beef chili hot dogs, Galardi affirmatively represented that its all-beef chili hot dogs were all beef.

55.     Unfortunately for Plaintiff and the Class, Galardi's affirmative representations were, in fact, false. In particular, its "all-beef" chili hot dog products were not actually all beef—they contained pork.

56.     The representations made by Galardi about its supposedly all-beef chili hot dogs were material terms in their transactions with Plaintiff and the Class because they directly affected their choices to purchase and consume Galardi's food.

57.     As the creator of its food product recipes and designer of its marketing materials (including its retail advertisements and website advertisements), Galardi knew its representations about its all-beef chili hot dogs were false. Galardi intentionally designed its public representations to mislead consumers about the true ingredients of its all-beef chili hot dog products.

58.     Galardi made these representations with the intent to induce Plaintiff and the Class to rely upon them by purchasing its all beef chili hot dogs.

11

59.     Given the information asymmetry between Galardi and Plaintiff and the Class regarding the contents of its all-beef chili hot dogs, Plaintiff and the Class did not and could not reasonably have known of or discovered the falsity of its representations or avoided the harm those misrepresentations caused. They would not have purchased (or would have paid less) Galardi's all-beef chili hot dogs, but for the misrepresentations that they were all beef.

60.     As a result of their reasonable reliance on Galardi's misrepresentations, Plaintiff and the Class have suffered actual monetary damages in the form of the price paid for Galardi's all-beef chili hot dogs.

61.     Plaintiff therefore prays for relief in the amount of the price paid for Galardi's all-beef chili hot dogs. Plaintiff further alleges that Galardi's conduct and misrepresentations were made with malic and in conscious disregard of Plaintiff's and the Class's rights, thereby entitling them to punitive damages against Galardi in an amount sufficient to deter such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Maher Abdeljawad, individually and on behalf of the Class and Illinois Subclass, respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class and Illinois Subclass defined above, appointing Plaintiff Maher Abdeljawad as representative of the Class and Illinois Subclass, and appointing his counsel as class counsel;

B.     Declaring that Galardi's actions, as set out above, constitute violations of the ICFA, breach of express warranty, and fraudulent inducement;

C.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class and Illinois Subclass;

D.      Awarding damages to Plaintiff and the Class and Illinois Subclass in an amount to be determined at trial;

E.      Awarding restitution to Plaintiff and the Class and Illinois Subclass in an amount to be determined at trial, and disgorging all amounts by which Galardi has been unjustly enriched;

F.      Awarding Plaintiff and the Class and Illinois Subclass their reasonable litigation expenses and attorneys' fees and costs;

G.      Entering such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class and Illinois Subclass; and

H.      Awarding such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**MAHER ABDELJAWAD**, individually and
on behalf of all others similarly situated,

Dated: November 5, 2015                    By: /s/ Benjamin H. Richman
                                               One of Plaintiff's Attorneys

Benjamin H. Richman (lead counsel)
brichman@edelson.com
James Dominick Larry*
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Admission to be sought

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, hereby certify that on November 5, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the Court's CM/ECF electronic filing system, and will arrange for service of the same by process server at the address listed below:

Galardi Group, Inc.
c/o CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, California 90017

/s/ Benjamin H. Richman